# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2513 | **DATE** | December 23, 2003 |
| **CASE TITLE** | In re Kmart Corp. (Sierra Vista Associates, LLC v. Kmart Corp.) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **The Clerk of the Court is directed to enter judgment in favor of appellee Kmart Corporation and against appellant Sierra Vista Associates, LLC affirming the March 25, 2003 order of the Bankruptcy Court in 02 B 02474 which was entered on the Bankruptcy Court docket on March 31, 2003 (docket entry 9691).**

(11) ■ [For further detail see memorandum opinion and order attached to the original minute order.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | |
| ☐ No notices required. | number of notices |
| ☐ Notices mailed by judge's staff. | DEC 2 4 2003 |
| ☐ Notified counsel by telephone. | date docketed |
| ✓ Docketing to mail notices. | docketing deputy initials |
| ✓ Mail AO 450 form. | |
| ☐ Copy to judge/magistrate judge. | |

courtroom deputy's initials

**Document Number**

J 3

U.S. DISTRICT COURT
CLERK
03 DEC 23 AM 3: 16

date mailed notice

Date/time received in central Clerk's Office    mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                              )
                                    )   Case No. 03 C 2513
KMART CORPORATION, et al.           )
                                    )   Judge Joan B. Gottschall
                Debtors.            )
                                    )
_____ )
                                    )
SIERRA VISTA ASSOCIATES, LLC,       )   Appeal from the United
                                    )   States Bankruptcy Court
                Appellant,          )
                                    )   No. 02 B 02474
        v.                          )   Susan Pierson Sonderby
                                    )   Bankruptcy Judge
KMART CORPORATION,                  )
                                    )   **DOCKETED**
                Appellee.           )
                                        DEC 2 4 2003

## MEMORANDUM OPINION AND ORDER

        This is an appeal from the Bankruptcy Court's denial of a
motion to lift the automatic stay.  Under terms of a lease (the
"Original Lease"), debtor Kmart Corporation[1] leased property from
Sierra Vista Associates, LLC ("Sierra") on which a Big K store was
operated.  The property was located at Sierra Vista Shopping Center
(the "Shopping Center") in Albuquerque, New Mexico.  The parties
later entered into a lease (the "Ground Lease") for an overlapping
portion of the Shopping Center on which Kmart intended to operate
a Super K store.  Under the terms of the Ground Lease, the Original
Lease was to terminate at a certain point and the Ground Lease was
to be the only remaining lease between the two parties.  However,

_____

        [1]Both before and after the filing of its bankruptcy
petition, the party will be referred to simply as "Kmart."  For
present purposes, it is unnecessary to specifically recite that
some of the conduct is by the bankruptcy trustee.



before the Big K store was closed or the Super K store opened, Kmart went into bankruptcy and Kmart chose to reject the Ground Lease. Kmart contends that the rejection of the Ground Lease prevented the condition from occurring that would have terminated the Original Lease, and therefore it can continue to operate the Big K store under the terms of the Original Lease, which includes a provision permitting Kmart to renew the lease for an additional 50 years. Sierra contends that the condition for termination of the Original Lease came into being despite the rejection of the Ground Lease and therefore Kmart is no longer entitled to possession of the property on which the Big K is located. Sierra moved to lift the automatic stay so that it could pursue state court eviction proceedings in order to obtain possession of the property. The Bankruptcy Court denied Sierra's motion because it found that the Original Lease was still in effect, entitling Kmart to continue to lease the property, and obviating any need to lift the stay in order to bring eviction proceedings. Sierra has appealed that order.

I.    **FACTS**

The parties do not dispute the facts pertinent to this case.[2] The Original Lease was entered into in 1977 and was between predecessors to the current parties. The Original Lease was

---

[2]The parties generally do not cite to the record to support any of their factual representations. Most of the facts are simply the terms of the leases, copies of which are in the record, or the proceedings that occurred in the Bankruptcy Court. As to other facts, the uncontradicted representations contained in the briefs will be taken as true.

amended in 1979. The Original Lease provided that a 25-year term was to expire on September 30, 2003. Under the Original Lease, Kmart has renewal options that would entitle it to continue to lease the property for an additional 50 years after September 2003. The Original Lease pertains to an area of the Shopping Center that is approximately 14.3 acres and upon which a Big K store has been operated.

In 2001, Kmart approached Sierra regarding the possibility of replacing the Big K store with a larger Super K store. On May 14, 2001, the parties entered into the Ground Lease, which was amended on October 31, 2001. The Super K was to cover an area of the Shopping Center measuring approximately 11.7 acres. A few acres of the Super K location overlap with the location covered by the Original Lease. The intent of the parties was to permit Kmart to avoid, or at least minimize, any gap between the closing of the Big K and the opening of the Super K. It was also the intent of the parties that Sierra, which had to remove other tenants from the Super K location, would begin receiving higher lease payments within a time certain. The provisions of the Ground Lease that are pertinent to today's ruling are as follows:

> 1.  Definitions.  For purposes of this Lease, the following terms shall have the following meanings:
>
> * * *
>
> Rent Commencement Date: Subject to any other applicable provisions of this Lease, the earlier of (i) the date on which Lessee opens the Kmart Building [Super K] for business to the general public, or (ii) nineteen (19) months after the date of this Lease [December 14, 2002].
>
> * * *

6. <u>Construction of Improvements and Common Areas</u>.

\* \* \*

(g) . . . the parties acknowledge that Lessee will continue to operate the existing Kmart store [Big K] in the Shopping Center during construction of the Kmart Building for as long as practicable, to be determined by the Lessee in its reasonable discretion, and the demolition of the existing Kmart store shall occur thereafter at the time deemed appropriate by Lessee, in its sole discretion. . . .

\* \* \*

41. <u>Governing Law</u>. This Lease shall be governed by and interpreted under the laws of the state in which the Premises are located.

42. <u>Entire Agreement</u>. This Lease, and the Exhibits attached hereto and forming a part hereof, set forth all understandings between Lessor and Lessee concerning the Premises and there are no covenants, promises, agreements, conditions, provisions or understandings, either oral or written, between them other than are herein set forth.

\* \* \*

45. <u>Existing Lease</u>. The parties acknowledge the existence of the lease in effect dated June 20, 1977, as amended by First Amendment of Lease dated April 4, 1979 (as amended, the "Original Lease"), whereby Lessor currently leases to Lessee the existing Kmart store in the Shopping Center upon 14.3 acres of land. Upon the occurrence of the Rent Commencement Date as provided herein, and only upon the occurrence of the Rent Commencement Date, the Original Lease shall be terminated as if the Rent Commencement Date was the date set forth in the Original Lease for the expiration of the term thereof.

Section 7 of the Ground Lease sets forth the length of the lease. The initial length of the Ground Lease is broken down into three phases. The "Preliminary Term" was to run from the signing of the Ground Lease until the Rent Commencement Date. The "Interim Term" was to run from the Rent Commencement Date until the last day of the month in which the Rent Commencement Date fell. The

"Primary Term" was to run for 25 years from the first day of the month following the Rent Commencement Date. Section 7 also provided for "Extended Terms," permitting Kmart to renew for up to ten additional five-year terms and a "Supplemental Term" permitting Kmart to make January 31 the last date of the final term. Section 7 also contains the following provision:

> (e) Confirmation of Rent Commencement Date. Within thirty (30) days after a request by either party after the Rent Commencement Date has been determined, Lessor and Lessee shall execute, acknowledge and deliver to each other duplicate originals of an agreement setting forth the Rent Commencement Date, the date of commencement and expiration of the Primary Term of this Lease and the date of commencement of the first Extended Term in the event the option of Lessee to extend is thereafter exercised.

Section 8 contains the rent provisions. No "Basic Rent" had to be paid during the Preliminary Term. Once the Primary Term begins, Basic Rent was to be $53,437.50 per month for the first ten years. During the Interim Term, a daily amount was to be paid that would have been equal to the monthly rent during the Primary Term. Although no Basic Rent was to be paid during the Preliminary Term, during that time period Kmart was to pay "Construction Rent" of $16,667.00 per month representing lost rent for one of the buildings to be demolished to make room for the Super K and was also to pay up to $300,000.00 for costs of relocating one of the tenants. See Ground Lease § 8(b). Prior to the Rental Commencement Date, Kmart also was to continue to pay rent under the Original Lease. The Original Lease provided for rent of $24,000.00 per month plus 1% of gross annual sales exceeding $12,500,000.00.

Payments due prior to the Rental Commencement Date apparently were less than what would be due under the Ground Lease, but would still be something more than $40,667.00 per month.

Section 30 of the Ground Lease is entitled "Conditions Subsequent." These were all conditions that had to be met by Sierra, including such things as obtaining necessary permits and zoning, environmental and topography requirements, preparing curb cuts for construction vehicles, and having tenants move out of the existing buildings. Most of these conditions had deadlines of November 30, 2001 and Sierra represents in its brief that all the conditions of § 30 were timely satisfied. Had it not satisfied the conditions, however, Kmart could have terminated the Ground Lease or, for one condition, the Rent Commencement Date could have been extended. See First Amendment to Ground Lease ¶¶ 1-2.

On January 22, 2002, Kmart filed its Chapter 11 bankruptcy petition. Kmart continued to operate its business as the debtor-in-possession. Under 11 U.S.C. § 365, Kmart had the option of assuming or rejecting unexpired leases. Id. § 365(a). Kmart was to make its assumption/rejection elections as to leases within 60 days after filing the petition or within such additional time as might be permitted by the bankruptcy court. Id. § 365(d)(4). Upon the motion of Kmart and the opposition of Sierra and other parties, the bankruptcy court granted an extension of this deadline until March 31, 2003 for certain leases (including the Ground Lease) and until July 31, 2003 or confirmation for other leases (including the Original Lease).

On September 5, 2002, Sierra moved to shorten the time for Kmart to make its election regarding the Ground Lease. On October 10, 2002, Sierra moved for an order lifting the stay regarding the Original Lease so that it could evict Kmart from the Big K located at the Shopping Center. On October 16, 2002, Kmart moved for an order permitting it to reject the Ground Lease on 10 days notice to Sierra. In an order dated October 30, 2002, Kmart was granted permission to reject the Ground Lease, the rejection to be effective 10 days after it provided notice to Sierra. As of the rejection date, Sierra would be entitled to possession and Kmart was to pay pro-rated rent from the January 22, 2002 filing of the bankruptcy petition until the rejection date. Sierra's motion to lift the stay was denied as being premature. Sierra did not appeal either of the Bankruptcy Court's rulings. The motion to shorten the deadline for Kmart's Ground Lease election was continued.

Kmart sent a notice of rejection of the Ground Lease that was effective December 6, 2002.[3] On December 30, 2002, taking the position that, based on § 45 of the Ground Lease, the Original Lease had terminated on December 14, 2002, Sierra filed a motion requesting that the automatic stay be lifted as to the Original Lease and the Big K store. If the Original Lease had terminated,

---

[3]A copy of the notice of rejection is not cited by the parties nor has it been found in the record. In its opening brief, Sierra stated December 6 was the date of the notice, Appellant Br. at 7, and also that December 12, 2003 (sic) was the date of rejection, id. at 14. In its reply, Sierra states December 6 is the effective date, Reply at 2, and all other indications, including an express finding by the Bankruptcy Court, are that the effective date of rejection was prior to December 14, 2002.

it was no longer premature to request that the stay be lifted so that Sierra could obtain possession of the portion of the Shopping Center that is the subject of the Original Lease. Both parties represented that no evidentiary hearing was necessary to resolve the automatic stay issue.

On March 25, 2003, the Bankruptcy Court orally ruled on the pending motion to lift the stay, denying it. This is the ruling from which Sierra has appealed. The Bankruptcy Court held that, under either federal law or the law of New Mexico, the Ground Lease terminated upon rejection, further specific performance was not possible, and therefore a Rent Commencement Date terminating the Original Lease never occurred. The Bankruptcy Court also held that § 45 was not an amendment to the Original Lease that continued in effect as to the Original Lease regardless of the termination of the Ground Lease. Kmart was granted until April 15, 2003 to elect whether to assume or reject the Original Lease. Kmart had previously indicated it would probably assume the Original Lease.

As part of its plan of reorganization, Kmart indicated its election to assume the Original Lease. On April 23, 2003, the Bankruptcy Court confirmed the First Amended Joint Plan of Reorganization as Modified which incorporated the assumption of the Original Lease. Sierra did not appeal from that order.

## II.    SEPARATE LEASES

The integration clause of the Ground Lease (§ 42) states that the Ground Lease and its exhibits are the parties' entire understanding regarding the Premises covered by the Ground Lease.

The Original Lease is not an exhibit to the Ground Lease. However, the Original Lease pertains to the portion of the Ground Lease Premises that overlaps the land covered by the Original Lease. This is not an inconsistency because § 45 of the Ground Lease expressly acknowledges the continued existence of the Original Lease, and the integration clause does not state that prior agreements are superseded or amended. Under the plain language of the Ground Lease, the Original Lease continues to exist until it is terminated in accordance with § 45. Since the Original Lease itself, including its terms, is not actually incorporated in, made a part of, or attached as an exhibit to the Ground Lease, under the plain language of § 42 of the Ground Lease, the Original Lease remains a separately existing contract until terminated in accordance with § 45.

Under New Mexico law,[4] the principle of substitution (merger) applies when there are two contracts on the same subject matter. Under that principle, a presumption arises that the prior contract is included in the later contract and, where there is an inconsistency between the two contracts, the later contract will control. Richards v. Allianz Life Insurance Co. of North America, 133 N.M. 229, 62 P.3d 320, 324 (N.M. Ct. App.), cert. denied, 133 N.M. 30, 59 P.3d 1262 (N.M. 2002). Regardless of the presumption, however, the language of the contracts still must be considered,

---

[4]The Original Lease does not contain a choice of law provision. However, the parties have assumed New Mexico law applies. This is appropriate since the subject matter of the lease is real property located in New Mexico.

particularly any merger, integration, or substitution provision contained in the later contract. See, e.g., id. ("The 1996 agreement unambiguously contemplates that it is a substitute for the 1960s contract."). Compare Fontbank, Inc. v. CompuServe, Inc., 138 Ohio App. 3d 801, 742 N.E.2d 674, 682-83, appeal denied, 90 Ohio St. 3d 1493, 739 N.E.2d 817 (2000). "The issue of whether a new contract is intended to govern over a prior agreement is answered by the same analysis that applies to the enforceability of any contract." Richards, 62 P.3d at 324. Additionally, any presumption that arises is a rebuttable presumption, not an irrebuttable presumption. See Bruggeman v. Jerry's Enterprises, Inc., 591 N.W.2d 705, 710 (Minn. 1999).

Here, the contracts do not cover exactly the same subject matter. They cover different areas of the Shopping Center that have a partial overlap. There is also a provision in the later contract regarding the termination provision in the earlier contract. Under such circumstances, the presumption should not be as strong as when two contracts cover identical subject matter. In any event, any presumption that might arise as to substitution is overcome by the plain language of § 42 and § 45 of the Ground Lease, which, as explained above, provides that the Original Lease will remain in force until terminated in accordance with § 45 of the Ground Lease.

Additionally, the language of the Ground Lease is inconsistent with Sierra's contention that § 45 of the Ground Lease was an amendment to the Original Lease that survived any

termination of the Ground Lease. Sierra does not dispute the absence of an express statement that the Original Lease was amended. Of course, an amendment could be made without using the word "amend" or some form thereof. However, § 45 assumes the coexistence of the two leases by stating that the Original Lease will be terminated only upon the occurrence of a Rent Commencement Date under the Ground Lease. That is different from making the new termination date a provision of the prior contract, which is what an amendment would effectuate. The termination of the prior agreement was not a provision of the prior agreement, but rather a provision of the new agreement. If, after entering into the Ground Lease, the parties had agreed to end the Ground Lease without the Rent Commencement Date having occurred, the Original Lease would have remained in full force and effect, entirely unaffected by the Ground Lease.

Thus, the Ground Lease was a contract distinct from the Original Lease, not an amendment of the Original Lease. Such a construction is consistent with the surrounding circumstances, including the parties' intent, as expressed in § 6(g) of the Ground Lease, that the Big K store was to remain open and functioning for as long as practicable during the Preliminary Term of the Ground Lease and possibly for longer as well.

III.    **EFFECT OF REJECTION**

Under § 45 of the Ground Lease, the Original Lease is terminated "only upon the occurrence of the Rent Commencement Date" as provided in the Ground Lease. Section 1 of the Ground Lease

defines the Rent Commencement Date as being the earlier of two possible dates.[5] One possible date was the opening of the Super K. Since the Super K never opened, this Rent Commencement Date trigger never occurred and the Original Lease never terminated under this clause. That leaves December 14, 2002 as the only possible Rent Commencement Date. The question is whether the Original Lease terminated on that date even though the Ground Lease had been rejected prior to December 14, 2002, namely, on December 6. The Original Lease did not terminate if either (a) § 45 was no longer effective because of the rejection of the Ground Lease or (b) rejection of the Ground Lease meant that the Rent Commencement Date did not "occur" as was necessary for termination of the Original Lease.[6]

In accordance with 11 U.S.C. § 365(g)(1), Kmart's rejection of the lease constituted a breach of the lease effective the day before the Chapter 11 petition was filed, that is January 21, 2002. The effect of relating back the breach is that any damages which Sierra may be able to claim based on the breach is deemed a prepetition, unsecured claim. See In re FBI Distribution Corp.,

_____

[5]In accordance with § 30(i) of the Ground Lease, it was also possible that the Rent Commencement Date could be modified. Modification under that provision, however, did not occur, leaving only the two possibilities discussed in the text.

[6]The provision of § 7(e) of the Ground Lease regarding confirmation of the Rent Commencement Date does not affect whether of not the Rent Commencement Date occurred. Written confirmation of the Rent Commencement Date is only required if one party requests it. Moreover, the written confirmation only acknowledges in writing the date of an event that has already occurred; the written confirmation does not itself trigger the Rent Commencement Date.

- 12 -

330 F.3d 36, 42 (1st Cir. 2003); <u>In re Miller</u>, 282 F.3d 874, 878 (6th Cir. 2002). Appropriate rents and other obligations accruing between the filing of the petition and the date of rejection become administrative expenses. <u>See</u> 11 U.S.C. § 365(d)(3); <u>In re Handy Andy Home Improvement Centers, Inc.</u>, 144 F.3d 1125 (7th Cir. 1998); <u>In re Trans World Airlines, Inc.</u>, 145 F.3d 124, 136-37 (3d Cir. 1998); <u>In re CCI Wireless, LLC</u>, 297 B.R. 133, 141-42 (D. Colo. 2003); <u>In re Twigland Fashions, Inc.</u>, 198 B.R. 199, 200-01 (W.D. Tex. 1996).

The two rules just recited cover the time up until the actual date of rejection. The issue in the present case is what happens subsequent to rejection. Under the Bankruptcy Court's order of October 30, 2002, Sierra was to "be entitled to immediate possession of the premises as of the Rejection Date, subject to applicable state law." Docket item 7291 ¶ 1. That order essentially terminated the Ground Lease effective December 6, 2002, leaving Sierra with an unsecured claim for damages based on breach and a priority claim for any appropriate administrative expenses. If the Bankruptcy Court's order was proper, no Rent Commencement Date occurred because the Ground Lease had already ended before December 14, 2002 arrived. <u>See Mayfield Smithson Enterprises v. Com-Quip, Inc.</u>, 120 N.M. 9, 896 P.2d 1156, 1162-63 (N.M. 1995) (where bankruptcy court approves debtor-lessee's rejection of lease and orders that debtor surrender property to the lessor, the leasehold and related rights are extinguished).

The Bankruptcy Code is unclear as to the effect of a rejection. Section 365(g) provides that rejection constitutes a breach of contract. Some courts have read this as meaning that rejection is merely a breach and cannot constitute a termination of the contract unless the contract makes the breach a termination. See, e.g., Miller, 282 F.3d at 877-78; In re Modern Textile, Inc., 900 F.2d 1184, 1191 (8th Cir. 1990); B.N. Realty Associates v. Lichtenstein, 238 B.R. 249, 255 (S.D.N.Y. 1999); In re Pre-Press Graphics Co., 300 B.R. 902, 909 (Bankr. N.D. Ill. 2003). Section 365(d)(4) provides that, when the debtor fails to make the § 365 election as to a lease for nonresidential real property within the time allowed, the lease will be deemed rejected and the trustee must immediately surrender the property to the lessor. Some courts have read that provision as meaning that rejection by a debtor-lessee, whether affirmatively or by default, constitutes a termination of the lease. See, e.g., In re 6177 Realty Associates, Inc., 142 B.R. 1017, 1019 (Bankr. S.D. Fla. 1992); In re Giles Associates, Inc., 92 B.R. 695, 698 (Bankr. W.D. Tex. 1988). The provisions of sections 365(h), (i), and (n), which permit rejections to be treated as terminations under specified circumstances, have been read as implying that a rejection is not automatically a termination. See In re Austin Development Co., 19 F.3d 1077, 1082-83 (6th Cir.), cert. denied. 513 U.S. 874 (1994).

The case law, as well as commentators, have been split regarding the effect of rejection. Apparently a majority of cases have held that rejection of an executory contract or unexpired

lease results in termination. See Laura B. Bartell, Revisiting Rejection: Secured Party Interests in Leases & Executory Contracts, 103 Dick. L. Rev. 497, 499 n.7, 500 n.9, 531-32 & n.106 (1999). A recent count limited to cases involving unexpired leases finds a slim majority of cases favoring that rejection of a lease results in termination of the lease. See Jerome D. Whalen, Practising Law Institute Commercial Ground Leases App. D at D-4-6 & nn.21-26 (2003).[7] One treatise suggests that the case law is more guided by the possible effects of termination and the court's perceptions of the equities of the case (e.g., whether one party will receive a windfall or whether a third-party will be unfairly and adversely affected) than by a reasoned construction of the statutory scheme. See James F. Queenan, Jr., Philip J. Hendel, & Ingrid M. Hillinger, Chapter 11 Theory and Practice: A Guide to Reorganization § 18.22 at 18:80-81 (1994). Commentators have also disagreed regarding the effect of rejection. Compare Michael T. Andrew, Executory Contracts in Bankruptcy: Understanding "Rejection", 59 U. Colo. L. Rev. 845 (1988); Michael T. Andrew, Executory Contracts Revisited: A Reply to Professor Westbrook, 62 U. Colo. L. Rev. 1 (1991); Jay Lawrence Westbrook, A Functional Analysis of Executory Contracts, 74 Minn. L. Rev. 227 (1989); and Collier on Bankruptcy ¶ 365.09[3] (Alan N. Resnick & Henry J.

---

[7]As to the termination effect, there may be differences between unexpired leases and executory contracts such that cases decided regarding one may not be persuasive authority regarding the other. Whalen, App. at D-4 n.22.

Sommer, eds., 15th Rev. Ed. 2000), with Bartell, _supra_.  See also
Whalen, _supra_.

While § 365 is not clear as to the effect of a rejection of
a nonresidential lease by a debtor-lessee, the various provisions
of § 365 can be consistently construed as indicating the effect of
such a rejection.  The rejection is to be treated as a breach of
contract for purposes of determining the appropriate amount of
damages to be awarded as an unsecured, prepetition claim of the
lessor.  To the extent the lease is not otherwise terminated, the
nondebtor-lessor may also rely on the breach to exercise any right
it may have to terminate because of a breach.  Ordinarily, the
debtor will be required to surrender the property upon rejection,
though particular circumstances may call for other action to be
taken.  Whether the lease is terminated will depend on the
particular circumstances, but ordinarily, if the property is
surrendered, the lease should also be terminated.  See Sea Harvest
Corp. v. Riviera Land Co., 868 F.2d 1077, 1080-81 (9th Cir. 1989);
6177 Realty, 142 B.R. at 1019; In re Radco Merchandising Services,
Inc., 111 B.R. 684, 688 (N.D. Ill. 1990); Whalen, at D-12-13;
Bartell, 103 Dick. L. Rev. at 529.  See also In re Henderson, 245
B.R. 449, 453-54 (Bankr. S.D.N.Y. 2000).  But see Austin, 19 F.3d
at 1082-83.  Whether to require surrender and whether to treat the
lease as terminated would be within the discretion of the

Bankruptcy Court depending on the particular facts and circumstances of the lease.[8]

Here, the Bankruptcy Court acted properly in treating the rejection as a termination of the lease, whether under federal law or state law. Kmart never constructed or opened the new Super K and, because of rejection, will not do so following reorganization. Sierra had already removed other tenants and demolished the existing buildings, but such expenses will be appropriately compensated through its prepetition claim for damages arising from the breach, as well as through Construction Rent that was paid prior to Kmart's bankruptcy petition and Construction Rent paid as an administrative expense until the effective date of the rejection. There is no contention that any third-party mortgagors or other lienholders were adversely affected by treating the rejection as a termination. Under these circumstances, surrendering the premises was essentially a complete termination of the parties' relationship under the Ground Lease. Therefore, the Bankruptcy Court did not abuse any discretion it had to treat the rejection and Kmart's surrender of any right to the property as a termination of the lease under § 365.

Moreover, even if the Bankruptcy Court had treated the rejection as a basis for requiring surrender and terminating the

---

[8]In accordance with § 365(d)(4), surrender of the property would be mandatory where the rejection occurs through failure to make a timely election. The present case does not present the issue of whether there would be any appropriate exceptions to the mandate of that provision. In the present case, Kmart affirmatively elected to reject the Ground Lease.

leasehold,[9] but not as a termination of the lease itself, the lease nevertheless would have terminated under New Mexico law. Kmart does not dispute that the ordinary rule under New Mexico law is that a lessee's breach of a lease does not relieve it of the obligation to pay remaining rent or of other remaining obligations under the lease. However, the New Mexico Supreme Court has held that, when a bankruptcy court approves a debtor-lessee's rejection of a lease and orders the debtor to surrender possession of the property to the lessor, the leasehold and related rights are thereby extinguished. Mayfield, 896 P.2d at 1162-63. Contrary to Sierra's contention, this appears to have been a holding based on state law that was independent of the New Mexico court's discussion of whether the lease in that case terminated upon rejection under federal bankruptcy law.

> Because the bankruptcy court's rejection surrendered all property rights to the lessor, it logically follows that there was an extinguishment of the leasehold and any liens encumbering that leasehold. . . . We hold that any lien that Com-Quip may have had against the leasehold ended with the bankruptcy's rejection of the lease and termination of the leasehold.

Id. The focus in Mayfield was on the surrender of the property and termination of the leasehold, not on the termination of the lease itself. It is undisputed in the present case that the leasehold (that is, the right to possess the premises) was terminated upon rejection, even if the lease itself was not terminated. Thus, even

---

[9]There is no contention by Sierra that it was improper to require that, upon rejection, Kmart surrender its Ground Lease rights to possession of the Premises.

if, under federal law, the Ground Lease itself was not terminated upon rejection, the Ground Lease itself was terminated under New Mexico law when, upon rejection, Kmart was required to forfeit any possessory interest it had under the Ground Lease. Therefore, even without the Bankruptcy Court treating the Ground Lease as being terminated, rights under the Ground Lease ceased to exist as of December 6, 2002 and the Rent Commencement Date never occurred.

## IV.     OTHER CONTENTIONS

Sierra alternatively argues that it was improper to permit rejection of the Ground Lease while allowing the Original Lease to be assumed. This is based on the contention that there is only one integrated lease and that, under § 365, it is improper to permit selective rejection and assumption of provisions of a lease. As was discussed above, the Ground Lease and Original Lease were not integrated, but remained separate and distinct leases under the terms of the Ground Lease. Since the premise for Sierra's argument (the existence of a single, integrated lease) is incorrect, this argument fails. It is therefore unnecessary to consider whether the "separability" clause of the Ground Lease (§ 34) would have allowed for rejection of the Ground Lease and acceptance of the Original Lease. See In re Plitt Amusement Co. of Washington, Inc., 233 B.R. 837, 845-46 (Bankr. C.D. Cal. 1999); In re Integrated Health Services, Inc., 2000 WL 33712484 *3-4 (Bankr. D. Del. July 7, 2000).

Sierra's last contention is that the Bankruptcy Court should have held an evidentiary hearing and considered extrinsic

evidence in determining whether the Original Lease and Ground Lease remained separate contracts. Under New Mexico law, extrinsic evidence is generally not considered if the contract language is unambiguous when construed in light of the surrounding circumstances. See Strata Production Co. v. Mercury Exploration Co., 121 N.M. 622, 916 P.2d 822, 830 (N.M. 1996); Medina v. Sunstate Realty, Inc., 119 N.M. 136, 889 P.2d 171, 173 (N.M. 1995). As discussed above, sections 42 and 45 provide unambiguously that the Original Lease remains separate and in force until terminated in accordance with the provisions of § 45. Additionally, Sierra never suggested to the Bankruptcy Court that there was relevant disputed extrinsic evidence. Even on appeal, it was not until its reply that Sierra first identified what this disputed evidence might be.[10] Alternatively, Sierra has waived any opportunity to contend that the Ground Lease must be construed in light of extrinsic evidence not considered by the Bankruptcy Court. See Unelko Corp. v. Prestone Products Corp., 116 F.3d 237, 239 (7th Cir. 1997); Carmichael v. The Payment Center, Inc., 336 F.3d 636, 642 (7th Cir. 2003).

**V.    CONCLUSION**

For the foregoing reasons, the Bankruptcy Court acted properly in determining that the Original Lease remained in force. With the Original Lease still in force, no basis exists for evicting Kmart from the Big K premises. Therefore, it was also

---

[10]It is not even clear from Sierra's summary description that there is extrinsic evidence that could affect the construction of the Ground Lease.

appropriate to deny the motion to lift the stay since the only stated purpose for lifting the stay was to permit the eviction of Kmart because the Original Lease had terminated.

Since the Bankruptcy Court is being affirmed on the merits, it is unnecessary to consider Kmart's additional arguments that Sierra waived all issues by making concessions in its arguments to the Bankruptcy Court and by failing to appeal the October 30, 2002 order or the April 23, 2003 confirmation order.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter judgment in favor of appellee Kmart Corporation and against appellant Sierra Vista Associates, LLC affirming the March 25, 2003 order of the Bankruptcy Court in 02 B 02474 which was entered on the Bankruptcy Court docket on March 31, 2003 (docket entry 9691).

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: DECEMBER 23, 2003